(65 App. Div. 93.)

### In re MacFARLANE et al.

(Supreme Court, Appellate Division, First Department. November 8, 1901.)

1. REFERENCE—REPORT—FORM—SUFFICIENCY.

    Exceptions to a referee's report, which definitely indicate what findings of fact and conclusions of law are excepted to, and give notice to the respondent of the questions that will be presented on appeal, are sufficient, whatever the form employed.

2. ASSIGNMENTS FOR BENEFIT OF CREDITORS—RECEIVERS—ACCOUNTING.

    Where a party is named assignee for the benefit of creditors under a general assignment, and is subsequently appointed receiver to take charge of the debtor's property in another state, and gives bond for the faithful discharge of his duties as such, he cannot be charged as assignee with all the assignor's property, whether in the state where appointed assignee or where appointed receiver, and then be refused credit for disbursements made on the receiver's account.

3. REFERENCE—EVIDENCE.

    On the hearing before a referee on the accounting of an assignee for the benefit of creditors, a statement purporting to show stock on hand and the value thereof, which was prepared at the assignee's request and

subsequently used in a suit brought by him, is admissible in evidence, though containing items not included in the assignee's inventory.

**4. ASSIGNMENTS FOR BENEFIT OF CREDITORS—SURCHARGE OF ASSIGNEE.**

Where an assignee for the benefit of creditors, who sells property in his hands at less than the appraised value, fails to show that the price received is fair and reasonable, and it appears that even the inventoried price is less than that for which like goods are sold by other dealers, it is not error to charge such assignee with the difference between the prices at which inventoried and at which sold.

**5. SAME—PROPERTY UNACCOUNTED FOR.**

In such case, on the assignee's failing to account for all the property set forth in his inventory, he may properly be charged with the same at its inventoried value.

**6. SAME—COMPENSATION OF ASSIGNEE.**

Where a party appointed assignee for the benefit of creditors, who is also named receiver of the debtor's property in another state, fails to keep his accounts in such different capacities separate, sells property at less than its inventoried value, which he fails to show is fair and reasonable, and also fails to account for property inventoried, it is not error to refuse to allow him compensation for services.

**7. REFERENCE—FEES OF REFEREE—INTEREST.**

Interest on the fees of a referee and the stenographer runs only from the date of the entry of judgment.

Appeal from special term, New York county.

In the matter of the general assignment of Wm. MacFarlane & Co. Proceeding by Homer R. Scoville for an accounting by administrator of Briton Richardson, deceased assignee. From an order granted on motion to confirm report of referee, the Fidelity & Deposit Company of Maryland appeals. Modified.

This proceeding was brought by a substituted assignee, Homer R. Scoville, for an accounting by the administrator of his predecessor, Briton Richardson, deceased, who was named under a general assignment as assignee for the benefit of creditors of Wm. MacFarlane & Co., dealers in silk, who owned and operated a factory at Bayonne, N. J., and occupied a store in New York City. Richardson qualified as assignee in April, 1896, and administered the estate until his death, in March, 1898. Immediately prior to the assignment the National Silk Label Company transferred to MacFarlane & Co. all its assets, and also its indebtedness. Richardson filed his schedules as assignee, and gave his bond for $80,000, with the Fidelity & Deposit Company of Maryland as surety. His moneys he deposited in the People's Trust Company of Brooklyn. Actions were brought by creditors of MacFarlane & Co. and of the Silk Label Company, both in New York and in New Jersey, and the assignee brought suit in New Jersey to restrain creditors from interfering with the property there which he was holding as assignee, and on October 12, 1896, an order was entered in this latter suit in the state of New Jersey, appointing Richardson receiver to take charge of the property in that state, and directing that he give a bond for $40,000, which he did with the same surety company. Thereafter Richardson continued to administer the estate, to make sales and expenditures, and continued to use the People's Bank of Brooklyn as a depository, making no distinction between moneys received as assignee and as receiver. There is therefore much confusion in the accounts which might have been cleared up by the books, but these were not obtainable, having in some unaccountable way, through Richardson's removing them shortly before his death, been lost. The actions brought in New Jersey resulted in judgments against the receiver, which were paid by Richardson as receiver, or by his surety, the Fidelity & Deposit Company of Maryland. Actions had also been begun in the state of New York to set aside the general assignment as fraudulent, which resulted in July, 1897, in judgments setting aside the assignment, and directing that Richardson turn over to Randolph Guggenheimer, who was appointed receiver, property

belonging to the estate. Thereupon Richardson paid over to the new receiver the sum of $19,000 from the People's Bank of Brooklyn, leaving there still the sum of $14,779.24. Upon the death of Richardson in March, 1898, this present proceeding was begun by the substituted assignee for an accounting by his administrator. An accounting was thereupon had, and the issues presented were heard before a referee, whose report was confirmed, and from the order so confirming it this appeal is taken by the surety of Richardson, the Fidelity & Deposit Company of Maryland.

Argued before VAN BRUNT, P. J., and PATTERSON, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

James Russell Soley, for appellant.

Carlisle Norwood, for respondent.

O'BRIEN, J. The respondent insists that the questions here urged by the appellant are not before this court, for the reason that proper exceptions were not filed to the referee's report. The office of exceptions is, by suitable notice, to call attention, where the trial has been had before a referee, to the findings of fact and conclusions of law which have been made by the referee, and which are not assented to by the appellant. Whatever criticism may be made as to the form of the exceptions, they definitely indicate what findings and conclusions are excepted to, and the form employed was sufficient to give notice to the respondent of the questions which would be presented on appeal. Regarding the exceptions as we do, therefore, sufficient to raise the issues presented, we are required on this appeal to pass upon many questions, the most important of which only will be discussed.

The first is whether the referee erred in charging the assignee with property which primarily was covered by the terms of the assignment, but the title and possession of which Richardson subsequently took and held as receiver under the order of the court in New Jersey. As matter of first impression, it would seem unjust to charge him with the value of all this property as assignee, and entirely disregard his relations to such of it as came under the order appointing him receiver, and this impression is strengthened by a consideration of the facts bearing upon his administration of the estate. Though it be assumed—which we do not decide—that the property in New Jersey passed under the assignment, and thereunder Richardson was vested with the title and right to possession of the same, it is made clearly to appear that he could not remove it from that state, and that before he could deal with it the courts of New Jersey had assumed jurisdiction over it, and thereafter his right to possession and administration of it was due to the power with which, under his appointment as receiver by the court of that state, he was vested. If, instead of Richardson, another person had been appointed receiver, much of the confusion which arises from considering this question would be obviated, yet the legal results are no different than they would be had another person than Richardson been appointed receiver in New Jersey. The courts there, having jurisdiction over the property, had the legal right to appoint a receiver, as they did, and have him take possession of the property, subject to the further orders of the court.

Richardson having entered upon such receivership, and having given a bond for the faithful discharge of his duties as such, it would be manifestly unjust to deprive him or his surety of all credit for disbursements or dispositions made of the property under the orders of the New Jersey court. The property, having been seized upon by that court, was in no way available or applicable to the payment of creditors here; and if Richardson is to be chargeable with all the property of this estate which came into his hands, regardless of whether it was received as assignee or receiver, then it is but right that he should be credited with the disbursements and dispositions of the same which he properly made in either capacity. We do not mean by this that he would have been entitled to credit for disbursements made as receiver in excess of property which in that capacity he had received. That question, however, is not presented; for although great confusion has been introduced by Richardson himself through his placing all his funds, both as receiver and as assignee, in one bank account, it is still practicable to determine with reasonable certainty the amount of property which he obtained as receiver, and the amount of money which, out of the proceeds realized from the sale of the same, he disbursed as receiver, and, as it is not claimed that such credits exceeded the value of the property, there is no just reason appearing why he should not have been credited with them.

Our conclusion, therefore, on this branch of the case, is that the referee erred in charging Richardson as assignee with all the property that belonged to his assignors, whether here or in New Jersey, and then refusing him credit for the disbursements made upon the receiver's account. Merely allowing him credit for property in New Jersey which was taken out of his possession by the sheriff and refusing to give him credit for moneys disbursed under order of the courts of that state was clearly inconsistent. The orderly way would have been, upon his accounting as assignee, either to have eliminated all consideration of the receivership, leaving his accounting as such to the courts of New Jersey, or where, as here, there was a blending of the two accounts, and no serious objection was made to his accounting for all the property which he received, whether as assignee or receiver, to charge him with the entire amount of the assigned estate, which included the New Jersey property, and credit him with the disbursements properly made as such receiver.

Another question urged on our attention is the alleged error of the referee in receiving in evidence a paper purporting to show stock on hand, and the value thereof, on April 27, 1896, and which contained items of property not included in the assignee's inventory. The accountant who prepared this statement testified that he did so at the request of Richardson, to whom he gave it, and that subsequently the latter, in a suit brought by him, used it as evidence. If we had simply the fact that the accountant had fixed the value of the merchandise mentioned in the statement, the objection to accepting the paper as evidence of value would be good; but in that connection we must take the further fact appearing, that Richardson, whose

duty it was and who was competent to place the value on the merchandise, had received the figures as prepared, and thereafter had made use of this very same statement in a lawsuit, which shows clearly his acquiescence and acceptance of the values set forth. The statement, therefore, was properly allowed in evidence.

A further exception to be considered related to the alleged error of the referee in surcharging the assignee with the difference between the prices at which the gum or thrown silk was inventoried and the prices at which it was sold by the assignee. Upon sufficient evidence the referee found that the inventory prices were less than the prices at which silk dealers at that time were selling similar merchandise. The assignee sold it, however, at much less than the prices at which it was inventoried, and in the absence of any explanation of the low prices at which it was sold, and in view of the fact appearing that it was worth as much, if not more, than the inventory prices, the referee was fully justified in charging the assignee with the difference. There is no force in the contention that the burden was upon the creditors to show that the silk was worth more than it was sold for, because the rule is that where property in the hands of an assignee is not sold at public auction, or in a public manner, but is sold at private sale, and for a less price than that at which it has been appraised, it is incumbent upon the assignee to show that the prices obtained were fair and reasonable. Not only was this burden not sustained by the assignee, but the creditors gave evidence that silk of like quality was sold by other dealers at still higher prices than it was valued in the inventory, which, we think, would have justified the referee in charging the assignee with a greater sum than he did, namely, the difference between the real value of the silk and the price at which he sold it. As the respondent, however, is not appealing from the conclusion of the referee, it should stand. The appellant's contention, that "the referee has gone even farther than to surcharge the assignee with the difference between the inventory value and the amount received," and that "the surcharge is in fact $8,389.12, with interest, while the difference between the inventory value and the amount actually received is $4,733.86," is answered by the fact appearing that, although the difference between the sum actually received for the merchandise sold by the receiver as stated in his account and the sum at which that merchandise was inventoried would be less than the surcharge, the assignee failed to account for all the merchandise set forth in his inventory under this "item," and for the merchandise unaccounted for the referee was justified in also charging him at its inventoried value, thus making up the total surcharge. In other words, as found by the referee, the assignee "should be charged with the inventory value of the silk contained in this item, the evidence not being sufficient to show that the prices obtained were reasonable, and also in some instances the silk contained in the account filed was not identified with the silk as charged in the inventory."

With respect to commissions to the assignee, we think, in view of the manner in which this estate was administered, the referee did

right in refusing to allow any compensation for services to the assignee.

The final exception relates to the provision in the order confirming the report of the referee, allowing interest on the referee's and stenographer's fees from the date of disbursement. Much might be said in favor of such a provision, but it is an unusual one, and one that has so far never been sanctioned in practice; the rule being that interest on costs should only run from the entry of the judgment.

In the respects which we have pointed out there must be a modification of the order confirming the referee's report, and as so modified it should be affirmed, without costs to either party. All concur.